[Crim. No. 10069. Second Dist., Div. Two. Nov. 1, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE WEST, JR., Defendant and Appellant.

Albert C. Garber, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—The question is one of probable cause for issue of a search warrant.

George West, Jr., was convicted of possession of marijuana (Health & Saf. Code, § 11530) and possession of cocaine (Health & Saf. Code, § 11500). The principal evidence against him was obtained through use of a warrant which authorized a search for marijuana of Apartment 3, at a designated address, and of the persons of George West, Jr., and Lou Ann Douglas. Officer William Caskey located West outside the apartment building, gave him a copy of the search warrant, removed a key from West's pocket, and used the key to enter Apartment 3. He found Lou Ann Douglas in bed and a large, brown-paper bag on the floor next to the bed. The bag's contents included a .38 caliber revolver, 70 grams of marijuana, eight marijuana cigarettes, and 9 grams of cocaine.

West's basic contention is that the search warrant was issued without a showing of probable cause, and therefore narcotics obtained through its use were seized in violation of the federal and state Constitutions, and should not have been received in evidence against him.

The search warrant was issued on the petition and supporting affidavit of Officer Caskey, the text of which is set forth below.[1] In essence, Officer Caskey swore he had received information from a reliable informant that West was using and selling marijuana and keeping it in Apartment 3, where he lived with a girl named Lou Ann; that Caskey on two

[1] "Personally appeared before me this 31st day of October 1963, W. H. CASKEY, LAPD, who, on oath, makes complaint, and deposes and says that he has and there is just, probable and reasonable cause to believe, and that he does believe, that there is now in the posssssion of George West, Jr., and Louann Douglas on the premises located at and described as Apartment 3, 3916 South Grand Avenue, Los Angeles, California, a two-story brick apartment house;

"and on the person(s) of George West, Jr., and Louann Douglas, the following personal property, to wit: Marijuana.

"Facts in support of issuance of search warrant:

"Your affiant has been a police officer for 17 and one-half years, and for the past 15 years he has been assigned to the narcotics division of the Los Angeles Police Department with the primary duty of investigating narcotics activities. In his experience he has made and assisted in making several hundred arrests for narcotics offenses. Your affiant has received formal academic and informal on-the-job training from the Los Angeles Police Department regarding narcotics and has testified as a narcotic expert several hundred times in the Municipal and Superior Courts of Los Angeles County. Your affiant is the investigator in charge of this case.

"Your affiant has received information on two separate occasions in the past from an informant regarding the possession of marijuana by various persons. On each of these occasions said information proved to be correct and resulted in two arrests for possession of marijuana. Said informant has never given your affiant any information that proved to be incorrect. Said informant is fearful of death or serious injuries if said informant's identity is revealed.

"On October 30, 1963, said confidential, reliable informant told your affiant the following: that George West, Jr., is living at Apartment 3, 3916 South Grand Avenue, Los Angeles, California, with a girl named Louann; that George West, Jr., is still using and selling marijuana and keeps his marijuana in said apartment.

"On October 30, 1963, your affiant learned that the utilities at said apartment are registered to Louann Douglas.

"On October 31, 1963, your affiant learned through police channels that Lou Ann McCord, also known as Lou Ann Douglas, was convicted in 1959 for violation of Section 11530 of the Health and Safety Code, and that George West, Jr., has been arrested several times for narcotics violations, one of which resulted in a conviction in 1960.

"That based upon the aforementioned information, facts and circumstances, your affiant has reasonable cause to believe that grounds for the issuance of a search warrant, as set forth in Section 1524 of the Penal Code, exist.

"That based upon the above facts, your affiant prays that a search warrant be issued for the seizure of said property, or any part thereof, in the day time *[(at any time of the day or night, good cause being shown therefor)], and that the same be brought before this magistrate or retained subject to the order of this court or of any other court in which the offense in respect to which the property or things taken is triable, pursuant to Section 1536 of the Penal Code."

* Bracketed material was stricken out in the original.

previous occasions had received correct information from this informant, which had led to arrests for possession of marijuana, and had never received incorrect information from him; that the utilities in Apartment 3 were registered to Lou Ann Douglas; and that both West and Lou Ann Douglas had been convicted of narcotics violations.

. The Fourth Amendment to the United States Constitution provides: ''The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.''

Did Caskey's affidavit contain sufficient information to satisfy the requirement of probable cause under the Fourth Amendment to the United States Constitution and thus allow a magistrate to issue the search warrant? Since the time of *Ker* v. *California*, 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726], the reasonableness of a search under state law has been measured by the same constitutional standard as that which governs the reasonableness of a search under federal law, and the decisions of the United States Supreme Court interpreting the Fourth Amendment now apply to California procedure by virtue of the Fourteenth Amendment. (*Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933].)

The affidavit on which the warrant was issued sets forth a police officer's belief that probable cause to search exists, based on (1) information from a reliable, confidential informant that West was using, selling, and possessing narcotics at Apartment 3 with a girl named Lou Ann; (2) registration of the utilities at Apartment 3 to Lou Ann Douglas; and (3) a record of prior narcotics convictions for West and Lou Ann Douglas.

Is this enough to establish probable cause? We think not. In our view the specific question is controlled by the decision of the United States Supreme Court in *Aguilar* v. *Texas*, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723], a case reversing a narcotics conviction in a state court because of the insufficiency of the affidavit supporting the search warrant. In *Aguilar*, the supporting affidavit set forth a police officer's belief that petitioner kept narcotics for sale at a particular address, a belief based on unspecified information from a reliable informant and on unspecified observations of the premises by the police. In holding that the affidavit did not

establish probable cause, the Supreme Court said that the unamplified conclusion of a reliable, confidential informant was an inadequate foundation from which to launch a search warrant. The facts supporting the informant's conclusion must be sufficiently developed in the affidavit to enable the issuing magistrate to judge for himself the persuasiveness of the information relied upon for probable cause. The affidavit in *Aguilar* failed to show that the police officer or his source had any personal knowledge of the matters set forth in the affidavit. For all that appeared, said the court, the source may have merely suspected the presence of narcotics in petitioner's possession. ▮ The Supreme Court then summarized the applicable rule: "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones* v. *United States,* 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf* v. *United States,* 376 U.S. 528 [84 S.Ct. 825, 11 L.Ed.2d 887], was 'credible' or his information 'reliable.' " (378 U.S. at p. 114.)

Nothing in the subsequent case of *United States* v. *Ventresca,* 380 U.S. 102 [85 S.Ct. 741, 13 L.Ed.2d 684], altered these basic requirements. Although the validity of the search warrant in question was upheld, the Supreme Court there pointed out: "This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar* v. *Texas, supra.* Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." (380 U.S. at pp. 108-109.)

*Aguilar* makes clear that a petition for a search warrant based solely on information from a reliable informant must set forth sufficient data in the supporting affidavit (1) to show that the informant is in fact reliable, and (2) to disclose the source of the informant's knowledge so that the examining magistrate can himself determine whether probable cause exists for the issue of the warrant.

In the present case the affidavit adequately disclosed the basis for the informant's reliability.

However, the informant's source of knowledge remained a secret. We do not know whether he himself had seen marijuana in the apartment, or had recently purchased it from West, or had otherwise personally obtained reliable and persuasive information; or whether, on the other hand, he was merely peddling second-hand gossip overheard in a barroom. Had information disclosing the informant's source of knowledge been included in the supporting affidavit, the magistrate could have exercised his own judgment as to the persuasiveness of the facts showing probable cause rather than been forced to rely on the judgment of the police. Under our Constitution the inferences from the facts must be drawn by a neutral and detached magistrate rather than by a police officer engaged in the often competitive enterprise of ferreting out crime. (*Johnson* v. *United States,* 333 U.S. 10, 14 [68 S.Ct. 367, 92 L.Ed. 436].)

Other United States Supreme Court cases reflect this same requirement: *Draper* v. *United States,* 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327] ; *Jones* v. *United States,* 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233] ; *Rugendorf* v. *United States,* 376 U.S. 528 [84 S.Ct. 825, 11 L.Ed.2d 887]. In these cases either an affidavit disclosed the source of knowledge of the informant (*Jones*—the informant had purchased narcotics from the suspects at the given address many times, most recently the day before; *Rugendorf*—the informant the previous week had seen 75 to 80 furs without labels on the premises and been told they were stolen), or the police had been given specific, detailed information of such a nature as to fairly imply personal knowledge of the facts by the informant (*Draper*—suspect would arrive from Chicago at the Denver railroad station at a particular time dressed in a particular manner). The historic maxim that the mere word of an informant does not justify an arrest has been summarized by Douglas, J., dissenting in *Draper* v. *United States*: "Hale, who traced the evolution of arrests without warrants in The History of the Pleas of the Crown (1st Am. ed. 1847), states that while officers need at times to act on information from others, they must make that information, so far as they can, their own. He puts a case where A, suspecting B 'on reasonable grounds' of being a felon, asks an officer to arrest B. The duty of the officer was stated as follows: 'He ought to inquire and examine the circumstances and causes of

the suspicion of A. which tho he cannot do it upon oath, yet such information may carry over the suspicion even to the constable, whereby it may become his suspicion as well as the suspicion of A.' '' (358 U.S. at 321-322.)

Is there in this case sufficient other information corroborating that of the informant to establish probable cause? It is, of course, possible for an informant's bare conclusion to be buttressed by secondary information, which itself does not amount to probable cause but which fortifies the first, and for the two in combination to provide sufficient cause for the issue of a search warrant. The difficulty with the case at bar is that the supporting affidavit contains no other probative information from which to infer that West was selling marijuana or keeping it in Apartment 3. A record of prior narcotics convictions does not corroborate a charge of present narcotics violations. (*People* v. *Reeves*, 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Privett*, 55 Cal.2d 698, 702 [12 Cal.Rptr. 874, 361 P.2d 602].) The critical fact is present violation of law, not past violation. The registration of the utilities in the name of Lou Ann Douglas contributes nothing to any inference of criminal conduct. In our view, the corroboration relied upon does not corroborate. The validity of the search warrant rests on the naked supposition that the conclusion of a reliable informant provides probable cause to issue a warrant, a supposition which the United States Supreme Court has rejected.

Additionally, we find that the supporting affidavit did not furnish sufficient probable cause for the issue of a search warrant under article I, section 19, of the California Constitution. Under the rulings of the California Supreme Court, a valid affidavit must disclose the source of the information on which reliance is placed, or must set forth some of the underlying circumstances which make the informants' tale more probable than not, or in some other fashion, corroborate an essential fact of the charge. (*People* v. *Gallegos*, 62 Cal. 2d 176 [41 Cal.Rptr. 590, 397 P.2d 174].)

In holding the search warrant invalid because of deficiencies in the supporting affidavit, we fully appreciate that disclosure of specific information about the informant's source of knowledge may go far to reveal his identity and thus further reduce the already-shortened life expectancy of police informants in narcotics cases—to the detriment of public order and of effective law enforcement. Indeed in this very case the tape-recorded conversation between the two persons arrested

discloses that their first concern on arrest was to discover the identity of the informant and figure out how they had been caught. The presence of the .38 caliber revolver in the brown-paper bag containing the narcotics provides concrete evidence that the informant may have had good reason to fear his life would be endangered by public disclosure of his identity. Yet if we are to retain ultimate control in the judiciary over authority to issue search warrants, the constitutional requirement of probable cause to the satisfaction of a magistrate cannot be abdicated to the police. In cases where disclosure of the informant's sources of knowledge to the extent necessary to obtain a warrant might reveal his identity and endanger his life, the police must secure independent corroborating evidence by further investigation before applying for the warrant. For example, had the police in this case over a period of time observed a stream of known narcotics users flowing in and out of West's apartment, or had they observed West apparently making sales and deliveries of narcotics, then such observations might have forestalled the need to disclose the informant's sources in order to obtain a search warrant. (*Ker* v. *California,* 374 U.S. 23, 35-36 [83 S.Ct. 1623, 10 L.Ed.2d 726].) We are confident that in most cases the courts and the police can achieve a common perspective in law enforcement which keeps in view both the constitutional protection of the individual against society and the constitutional protection of society against the lawless individual, and which sufficiently focuses on both targets so that neither drifts from sight.

Since the judgment must be reversed we do not reach the question of the validity of police questioning after arrest under the restrictions outlined in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

Court-appointed counsel for appellant in this case submitted briefs of the highest quality on difficult questions of law. We commend him for the excellence of his presentation.

Judgment reversed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied November 19, 1965, and respondent's petition for a hearing by the Supreme Court was denied December 22, 1965. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.